IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>v.<br><br>**ARIEL E. RAMOS,**<br>  **Defendant.** | **CASE NO. 5:24-CR-00034-MTT-CHW** |

**MOTION TO DISMISS INDICTMENT PURSUANT TO THE FIRST AMENDMENT OF THE UNITED STATES CONSTITUTION**

COMES NOW the Defendant, **Ariel E. Ramos**, by and through his counsel of record, herein moves the Court to dismiss the entire indictment brought forth against Mr. Ramos pursuant to the First Amendment of the United States Constitution. The following is shown in support of this Motion:

**I.     Facts**

Mr. Ramos was indicted on April 09, 2024, and charged with one count of mailing threatening communications in violation of 18 U.S.C. §876(c) (Doc. 1). Mr. Ramos operates an online business called Patriot Candle Company from his home in High Point, North Carolina. Through the business, Defendant sells candles, postcards, and other products depicting racial, white nationalist themes. Mr. Ramos also sells candles featuring antisemitic themes. One candle that Mr. Ramos sells on his website is called "Zyklon B" (a provocative call back to the hydrogen cyanide gas used during the Holocaust).

Mr. Ramos, keen to advertise his business during the current internationally publicized tensions of the conflict between Israel and Hamas in Gaza, began sending postcards to various persons with quite provocative language. On June 23, 2023, a neo-Nazi group gathered outside of

1

Temple Beth Israel in Macon, Georgia, holding signs containing antisemitic propaganda while the congregation was inside observing the start of Sabbath. There is no evidence that Mr. Ramos was among those gathered outside of Temple Beth Israel on June 23, 2023. The incident gained national media attention. Elizabeth Bahar was the Rabbi of Temple Beth Israel and began speaking publicly against antisemitism following the event. On January 22, 2024, Ms. Bahar spoke before the Georgia Senate Judiciary Committee in support of Georgia House Bill 30, a bill defining antisemitism. Georgia House Bill 30 was passed by the Georgia General Assembly and signed by the Governor of Georgia on January 31, 2024.

Mr. Ramos had been following, through the media, the occurrences taking place in Georgia during that time and saw an opportunity to capitalize on the media attention the passage of House Bill 30 was receiving in Georgia, in hopes of bringing more business traffic to his website. Part of Mr. Ramos' business model is to attempt to make his business go "viral" by sending these inappropriate postcards to various public-facing individuals, in hopes that they would share his postcard on social media, condemning the words, thus reaching both those who don't agree with the messaging, as well as those who may agree with the message, and thus may go to his website and purchase some of his products.

On February 01, 2024, Ms. Bahar received one such postcard to her address located in the Middle District of Georgia. The postcard was addressed to Ms. Bahar and contained the following statements: "Is there a child rape, torture, and murder tunnel under your house? We have the Zyklon B. Use Code "GASTHEJEWS" for 10% off!". There was even an image/watermark for Mr. Ramos' business, "Patriot Candle Co.", displayed in the background on both sides of the postcard. It is important to note that there is also evidence that Mr. Ramos did a laymen's research of Georgia law to make sure that he was not violating any provisions of it by sending the postcards.

Furthermore, Mr. Ramos, through the Patriots Candle Co. business, even advertised the release of the new postcards on the Gab social media platform, which is the same platform where he indicated that he searched Georgia law to make sure he wasn't overstepping the legal line of what he could say, even if it was overstepping the moral line.

**II.  Argument**

    **a. The First Amendment Protects Free Speech, No Matter How Unseemly or Offensive the speech may be to the general public.**

The First Amendment of the United States Constitution, applied to states through the Fourteenth Amendment, prohibits laws that abridge the freedom of speech or the press Mills v. Alabama, 384 U.S. 214 (1996). Governments cannot, therefore, restrict expression because of its message, its ideas, its subject matter, or its content. Mobilize the Message, LLC v. Bonta, 50 F.4th 928 (9th Cir. 2022), Stilp v. Contino, 613 F.3d 405 (3rd. Cir. 2010). This principle extends to hate speech, which is protected under the First Amendment. Davison v. Randall, 912 F.3d 666 (4th Cir. 2019), Volokh v. James, 656 F. Supp. 3d 431(2nd Cir. 2023). The Supreme Court has held that the state cannot inhibit the right to engage in hate speech, no matter how unseemly or offensive that speech may be to the general public or the state, no matter how obnoxious or distasteful. R.A.V. v. City of St. Paul, 505 U.S. 377 (1992) (finding unconstitutional a St. Paul ordinance which imposed special prohibitions on speakers who express disfavored views on race, color, creed, religion, or gender). The Court stressed, while still holding the hate speech activities constitutionally protected, "let there be no mistake about our belief that burning a cross in someone's front yard is reprehensible." Id. at 2550. See also Cole v. Richardson, 405 U.S. 676, 689 (1972) ("The First Amendment leaves the way wide open for people to favor, discuss, advocate, or incite causes and doctrines however obnoxious and antagonistic such views may be to the rest of us."); Collin v. Smith, 578 F.2d at 1206, 1210 (7th Cir. 1978) ("Above all else the

First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content [. . .] if these civil rights are to remain vital for all, they must protect not only those society deems acceptable, but also those whose ideas it quite justifiably rejects and despises.").

The government has not provided evidence that Mr. Ramos' conduct crossed the line of constitutionally protected conduct, no matter how reprehensible the postcards may have been. The postcards may have been awful, but they were not unlawful. Every statement made in the postcard sent to Ms. Bahar was constitutionally protected by the First Amendment.

> **b. "We Have the Zyklon B" does not constitute a "True Threat" for Purposes of Prosecution under 18 U.S.C. 876(c) under an Objective Person test or a Subjective Person test.**

The determination of whether a statement constitutes a true threat under Federal jurisdiction has been a subject of considerable legal debate. The primary issue revolves around whether the test for a true threat should be objective, subjective, or a combination of both. The objective test posits that a statement may be considered a true threat if a reasonable person would foresee that the statement would be interpreted by those to whom the maker communicates the statement as a serious expression of intent to harm or assault. Planned Parenthood of the Columbia/Willamette, Inc. v. Am. Coalition of Life Activists, 290 F.3d 1058 (9th Cir. 2002), Planned Parenthood of the Columbia/Willamette, Inc. v. Am. Coalition of Life Activists, 244 F.3d 1007 (9th Cir. 2001). This test does not consider the subjective intent of the speaker United States v. Williams, 690 F.3d 1056 (8th Cir. 2012). Instead, it focuses on whether an ordinary, reasonable recipient who is familiar with the context of the communication would interpret it as a threat of injury Heller v. Bedford Cent. Sch. Dist., 144 F. Supp. 3d 596 (2nd Cir. 2015), Heller v. Bedford Cent. Sch. Dist., 665 Fed. Appx. 49 (2nd Cir. 2015).

However, some Federal courts have suggested that the subjective intent of the speaker is a necessary element in determining whether a statement is a true threat United States v. Mabie, 663 F.3d 322 (8th Cir. 2011), Sheehan v. Gregoire, 272 F. Supp. 2d 1135 (9th Cir. 2003). The Ninth Circuit, for instance, has interpreted the United States Supreme Court's dictum in Virginia v. Black, 538 U.S. 343 (2003), to overrule the objective test in criminal cases, requiring that the defendant subjectively intended to threaten. Even if one does not go as far as the Ninth Circuit in believing that Black overruled the objective person test, there is little argument against the proposition that Black defined "true threats" as those statements ***where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence*** to a particular individual or group of individuals. Virginia v. Black, 538 U.S. 343, 359 (2003) (emphasis added). The subjective requirement of the true threat exception to the First Amendment is met only if the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals. Burge v. Colton Sch. Dist. 53, 100 F. Supp. 3d 1057 (9th Cir. 2015), United States v. Osadzinski, 97 F.4th 484 (7th Cir. 2024).

It is important to note that the United States Supreme Court has repeatedly opined that some consideration of an accused's subjective intent regarding the true threat is necessary in the analysis of whether the statements constituted a true threat. In Elonis v. United States, the Court was dealing with a transmitting threats case in violation of 18 U.S.C. §875(c). The Court found in Elonis that it was error for the jury to be instructed that the government need prove only that a reasonable person would regard petitioner's communications as threats. Elonis v. United States, 575 U.S. 723 (2015). The general basis for the Court's ruling in Elonis was that while a "'reasonable person' standard was a familiar feature of civil liability in tort law […] it is

5

inconsistent with "the conventional requirement for criminal conduct—awareness of some wrongdoing." Id., 575 U.S. at 738. The Court in Elonis went on to say the following:

> "Having liability turn on whether a "reasonable person" regards the communication as a threat—regardless of what the defendant thinks—"reduces culpability on the all-important element of the crime to negligence," *Jeffries*, 692 F. 3d, at 484 ,(Sutton, J., dubitante) and we "have long been reluctant to infer that a negligence standard was intended in criminal statutes," *Rogers* v. *United States*, 422 U.S. 35, 47, 95 S. Ct. 2091, 45 L. Ed. 2d 1 (1975) (Marshall, J., concurring) (citing *Morissette*, 342 U.S. 246, 72 S. Ct. 240, 96 L. Ed. 288). See 1 C. Torcia, Wharton's Criminal Law §27, pp. 171-172 (15th ed. 1993); *Cochran* v. *United States*, 157 U.S. 286, 294, 15 S. Ct. 628, 39 L. Ed. 704 (1895) (defendant could face "liability in a civil action for negligence, but he could only be held criminally for an evil intent actually existing in his mind")."

Elonis v. United States, 575 U.S. 723, 738 (2015).

The Court in Elonis believed that under the principles stated above that Elonis' subjective intent mattered to the analysis of whether he was transmitting threats, and we believe in the instant case that the court must consider Mr. Ramos' subjective intent also.

The United States Supreme Court further waded into this issue in Counterman v. Colorado. The Court in Counterman held that for unprotected true threats, the First Amendment still requires proof that defendant had some subjective understanding of the threatening nature of his statements. Counterman v. Colorado, 600 U.S. 66 (2023). At issue in Counterman were hundreds of Facebook messages sent by Counterman to C.W., a local singer and musician in Colorado. The two had never met, and C.W. did not respond. In fact, she tried repeatedly to block him, but each time, Counterman created a new Facebook account and resumed contacting C.W. Several of his messages envisaged violent harm befalling her. The State Colorado ultimately charged Counterman under a Colorado statute making it unlawful to "[r]epeatedly . . . make[ ] any form of communication with another person" in "a manner that would cause a reasonable person to suffer

6

serious emotional distress and does cause that person . . . to suffer serious emotional distress." Colo. Rev. Stat. §18-3-602(1)(c). Counterman moved to dismiss the charge on First Amendment grounds, arguing that his messages were not "true threats" and therefore could not form the basis of a criminal prosecution. Counterman lost his challenge at the trial, appellate, and State Supreme Court levels. Federal remedy was then sought by Counterman. The United States Supreme Court in Counterman held that the State must prove in true-threats cases that the defendant had some understanding of his statements' threatening character. Counterman v. Colorado, 600 U.S. 66, 73 (2023). In Counterman, the State of Colorado argued that only the "objective person" standard mattered when determining whether statements constituted "true threats" that fall outside the bounds of constitutional protections. Counterman argued that not requiring the government to prove that the accused subjectively, in some way, was aware of the threatening nature of the statements would chill protected, non-violent speech. Id. The United States Supreme Court agreed with Counterman's position. The "true" in the true threats assessment is what distinguishes it from jests, "hyperbole," or other statements that when taken in context do not convey a real possibility that violence will follow (say, "I am going to kill you for showing up late"). Watts v. United States, 394 U. S. 705, 708, 89 S. Ct. 1399, 22 L. Ed. 2d 664 (1969) (per curiam). True threats are "serious expression[s]" conveying that a speaker means to "commit an act of unlawful violence." Black, 538 U. S., at 359. The Court's endorsement of some sort of subjective standard element was to curb to the chilling, and self-censure, of non-proscribed speech of American citizens. The Court in Counterman discussed the ordinary citizen's "predictable tendency to steer 'wide of the unlawful zone'" Counterman, at 77. The Court states the following:

> "The same reasoning counsels in favor of requiring a subjective element in a true-threats case. This Court again must consider the prospect of chilling non-threatening expression, given the ordinary citizen's predictable tendency to steer

7

> "wide [ ] of the unlawful zone." *Speiser*, 357 U. S., at 526, 78 S. Ct. 1332, 2 L. Ed. 2d 1460. The speaker's fear of mistaking whether a statement is a threat; his fear of the legal system getting that judgment wrong; his fear, in any event, of incurring legal costs—all those may lead him to swallow words that are in fact not true threats.
>
> Some 50 years ago, Justice Marshall made the point when reviewing a true-threats prosecution arguably involving only political hyperbole. *See Rogers v. United* States, 422 U. S. 35, 95 S. Ct. 2091, 45 L. Ed. 2d 1 (1975). The Court in *Rogers* reversed the conviction on other grounds, but Justice Marshall focused on the danger of deterring non-threatening speech. An objective standard, turning only on how reasonable observers would construe a statement in context, would make people give threats "a wide berth." *Id.*, at 47, 95 S. Ct. 2091, 45 L. Ed. 2d 1 (concurring opinion). And so use of that standard would discourage the "uninhibited, robust, and wide-open debate that the First Amendment is intended to protect." *Id.*, at 48, 95 S. Ct. 2091, 45 L. Ed. 2d 1 (quoting Sullivan, 376 U. S., at 270, 84 S. Ct. 710, 11 L. Ed. 2d 686)."

Counterman v. Colorado, 600 U.S. 66, 77-78 (2023).

What Justice Marshall feared in *Rogers* is what the government is attempting to do in the instant case with Mr. Ramos. The government is attempting to contort "We have Zyklon B" from a candlemaker who makes harmless candles with that same title into something more than it actually is. The statement in question, while offensive and inappropriate, was made in the context of a promotional offer for a product. It does not express an intention to inflict harm or violence, but rather, it is nothing more than a misguided and insensitive marketing strategy.

### III. Conclusion

Mr. Ramos operates an online business in which one of the items he sells is provocatively titled candles, such as the "Zyklon B" candle at issue in this case. The postcard had clear indications that it was intended as promotional material for his business and not a true threat (or a threat of any kind actually), no matter how distasteful or reprehensible the general public may find the rhetoric. There was a functionally operable discount code that legitimately took 10% off of

products if you entered it into his website. That is highly indicative of Ms. Ramos subjective belief that he was merely advertising his business by sending this postcard, not intending to truly threaten Ms. Bahar. Even under the objective person standard, which again requires an objective person knowing the context of the claim, one would not consider "We have the Zyklon B", accompanied with a working discount code to a business that sells provocative (but harmless) candles titled Zyklon B a true threat. While the statement is undoubtedly offensive and inappropriate, it does not meet the legal criteria for a "true threat" under 18 U.S.C. 876(c) as defined by the Supreme Court.

FOR THE REASONS stated above, and any that may appear to the Court sua sponte, Mr. Ramos respectfully request this court to grant this motion and dismiss the indictment against pursuant to the First Amendment of the United States Constitution.

DATED this 28th day of June, 2024.

/s/**Byron L. Conway Jr.**
Byron L. Conway Jr.
Ga. Bar No. 487767
Attorney for Ariel Ramos
Federal Defenders of the
Middle District of Georgia, Inc.

440 Martin Luther King Jr. Blvd.
Suite 400
Macon, GA 31201
Tel: (478) 743-4747
Fax: (478) 207-3419
Email: Byron_Conway@fd.org

## CERTIFICATE OF SERVICE

I, Byron L. Conway Jr., hereby certify that on June 28, 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such to all counsel of record.

/s/**Byron L. Conway Jr.**
Byron L. Conway
Ga. Bar No. 487767
Attorney for Ariel Ramos
Federal Defenders of the
Middle District of Georgia, Inc.

440 Martin Luther King Jr. Blvd.
Suite 400
Macon, GA 31201
Tel: (478) 743-4747
Fax: (478) 207-3419
Email: Byron_Conway@fd.org