IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** : | |
| : | |
| v. : | CRIM. NO. 5:24-CR-00034-MTT-CHW |
| : | |
| **ARIEL E. COLLAZO RAMOS** : | |
| : | |

**UNITED STATES' RESPONSE TO
<u>DEFENDANT'S MOTION TO DISMISS THE INDICTMENT</u>**

COMES NOW the United States of America, by and through its attorney, the United States Attorney for the Middle District of Georgia, and files this brief showing that the Court should deny Ariel E. Collazo Ramos' Motion to Dismiss the Indictment Pursuant to the First Amendment of the United States Constitution. Defendant's postcard, on which he wrote "We have the Zyklon B" and "GASTHEJEWS," does not qualify as protected speech under the First Amendment. Rather, it contained a true threat, as that term is set forth in Title 18, United States Code, Section 876(c). Because Defendant cannot show that his conduct was protected speech, and the question of whether Defendant's message contained a true threat is a question for the jury, the Court should deny Defendant's motion to dismiss the indictment.

**I.      STATEMENT OF RELEVANT FACTS**

Defendant operated an online business called Patriot Candle Company from his home in High Point, North Carolina. Through the business, Defendant sold candles, postcards, and other products depicting racial, white nationalist themes.

For example, Defendant sold several postcards featuring pictures of Adolph Hitler wearing a Nazi uniform. Defendant also sold postcards featuring pictures related to the Holocaust. One postcard depicted Anne Frank in front of Auschwitz extermination and concentration camp with

the caption, "So much fun!" Another postcard displayed a hand-drawn image depicting a purported Jewish male wearing a rat costume and the words "JEWS ARE RATS."

Defendant also sold candles featuring antisemitic themes. One candle listed for sale on the website was called "Zyklon B." Zyklon B was the poison used to kill Jewish people in gas chambers in extermination camps during the Holocaust.

On June 23, 2023, a neo-Nazi group gathered outside of Temple Beth Israel in Macon, Georgia, holding signs containing antisemitic propaganda while the congregation was inside observing the start of Sabbath. The incident gained national media attention. Elizabeth Bahar was the Rabbi of Temple Beth Israel and began speaking publicly against antisemitism following the event.

On January 22, 2024, Rabbi Elizabeth Bahar spoke before the Georgia Senate Judiciary Committee in support of Georgia House Bill 30, a bill defining antisemitism. Georgia House Bill 30 was passed by the Georgia General Assembly and signed by the Governor of Georgia on January 31, 2024. The bill was sponsored by Georgia State Representative Esther Panitch. Representative Panitch was the only Jewish member of the Georgia House of Representatives and has been an outspoken advocate battling antisemitism.

On January 30, 2024, Representative Panitch received a threatening postcard at her home address located in the Northern District of Georgia, via U.S. Postal Service, from Defendant.[1] The postcard was addressed to Representative Panitch and contained the handwritten statement, "Is there a child rape, torture, and murder tunnel under your house? We have the Zyklon B. Use Code "GASTHEJEWS" for 10% off!" There was an image/watermark for "Patriot Candle Co."

---

[1] This fact is not listed in the indictment but may provide helpful context. Regardless, the United States intends to introduce evidence of this threat at trial.

2

displayed in the background on both sides of the postcard. The reverse side of the postcard displayed a hand-drawn image depicting a purported Jewish male wearing a rat costume and the words "JEWS ARE RATS." Representative Panitch received two other postcards from Defendant referencing the Holocaust at her home address, on or about February 7, and April 16, 2024.

On February 1, 2024, Rabbi Bahar received a threatening postcard at her home address located in the Middle District of Georgia, via U.S. Postal Service, from Defendant. The postcard was addressed to Rabbi Bahar and contained the handwritten statement, "Is there a child rape, torture, and murder tunnel under your house? We have the Zyklon B. Use Code "GASTHEJEWS" for 10% off!" There was an image/watermark for "Patriot Candle Co." displayed in the background on both sides of the postcard. The reverse side of the postcard displayed a hand-drawn image depicting a purported Jewish male wearing a rat costume and the words "JEWS ARE RATS."

Rabbi Bahar was familiar with Zyklon B because her great grandmother was killed with Zyklon B in Auschwitz extermination and concentration camp during the Holocaust. After receiving the postcard, Rabbi Bahar feared for her safety and the safety of her family and congregation, and reported the threatening postcard to the FBI. As a result of receiving the threat, she increased security measures at her home and at the Temple, and no longer allows her children to get the mail.

Defendant sent at least four additional postcards, containing similar threats to Jewish organizations referencing the use of Zyklon B: (1) The Temple, a synagogue located in Atlanta, Georgia, received a postcard on February 2, 2024; (2) Agudath Sholom Synagogue, located in Lynchburg, Virginia, received a postcard on February 6, 2024; (3) Chabad Lubavitch World Headquarters, located in Brooklyn, New York, received a postcard on February 13, 2024; (4) Ali's Cookies, a Jewish owned cookie store located in Atlanta, Georgia, received a postcard on

February 24, 2024. These postcards were not addressed directly to an individual, they were addressed to Jewish organizations or businesses.[2]

Defendant posted about the threatening postcards on Gab AI using his Patriot Candle Company account. Gab AI is a social networking website which advertises itself as an uncensored and unbiased platform. On January 31, 2024, Defendant, using Gab profile Patriot Candle Co., posted a news article about Representative Panitch receiving the threatening postcard. Defendant commented, "Cry harder you ugly kike bitch!" Defendant posted a picture of the postcard before it was postmarked and stated, "We did in fact send her that postcard." In private messages, Defendant stated:

> [2024-02-02 23:04:19 UTC] <PatriotCandleCo> I've been designing postcards all day. I also took a deep look at that Georgia law. That kike is going to be getting more postcards in the future, and there's nothing she can do about it.

Another user told Defendant to keep the image to himself for a week. Defendant responded:

> [2024-02-02 23:05:03 UTC] <PatriotCandleCo> But what about harassment you may ask? That only applies to telecommunications in Georgia. There is no harassment law against mail.

On February 9, 2024, Defendant posted a picture of the threatening postcard that he sent to Ali's Cookies in Atlanta. In response to the post, an individual sent a private message to Defendant stating that the government may charge Defendant with a hate crime. Defendant responded:

> [02-09-2024 04:11:52 PM] <PatriotCandleCo> I appreciate your concern, but it's what we do.

In the private message, Defendant included a link to the news article about the threatening postcard

---

[2] On February 10, 2024, Defendant also sent a postcard containing language nearly identical to that contained in Bahar's postcard to Stacy Sobel, the Connecticut Regional Director of the Anti-Defamation League (ADL). The ADL self-reports to be the leading anti-hate organization in the world with a mission to stop the defamation of the Jewish people and to secure justice and fair treatment to all. The image on her postcard depicted Anne Frank in front of Auschwitz extermination and concentration camp with the caption, "So much fun!"

sent to Representative Panitch.

During a child custody court hearing in North Carolina in February 2024, Defendant also admitted to sending the threatening postcard to Representative Panitch. The judge in the child custody case prohibited Defendant from having contact with his child. At the conclusion of the hearing, the judge warned Defendant that the FBI would likely investigate him for sending threats.

## II. PROCEDURAL HISTORY

On April 9, 2024, a grand jury in the Middle District of Georgia indicted Defendant for one count of Mailing Threatening Communications in violation of Title 18, United States Code, Section 876(c). Defendant had his initial appearance in the Middle District of North Carolina on May 2, 2024. Doc. 7. The United States moved for detention. Doc. 6.

Defendant had his arraignment and detention hearing in the Middle District of Georgia on May 30, 2024. Doc. 10. Defendant entered his plea of not guilty. Doc. 14. The Court entered an Order of Detention Pending Trial on June 6, 2024. Doc. 22. Trial is set to begin on September 16, 2024. Doc. 27. The United States responds herein to the issues raised by Defendant's motion.

## III. ARGUMENTS AND CITATIONS OF AUTHORITY

### A. Applicable Law

Defendant has been charged with Mailing Threatening Communications pursuant to Title 18, United States Code, Section 876(c). According to the statute:

> Whoever knowingly so deposits or causes to be delivered as aforesaid, any communication with or without a name or designating mark subscribed thereto, addressed to any other person and containing any threat to kidnap any person or any threat to injure the person of the addressee or of another, shall be fined under this title or imprisoned not more than five years, or both.

Defendant can be found guilty of violating § 876(c) if the following elements are proved beyond a reasonable doubt:

(1) the Defendant knowingly used the United States mail to send a true threat to [kidnap any person] [injure the person of another]; and

(2) the Defendant sent the message with the intent to communicate a true threat or with the knowledge that it would be viewed as a true threat.

*See* 11th Cir. Pattern Jury Instr. (Criminal Cases) 2024, O31.3. The Eleventh Circuit Jury Instructions define a "true threat" as "a serious threat – not idle talk, a careless remark, or something said jokingly – that is made under circumstances that would place a reasonable person in fear of [being . . . [injured] [another person being . . . [injured]." *Id.* Consistent with the Eleventh Circuit Jury Instructions, to convict under § 876(c), "The Government doesn't have to prove that the Defendant intended to carry out the threat." *Id.*

Although Defendant did not cite to the Federal Rules of Criminal Procedure in his motion, the United States interprets his motion as a challenge to the indictment for failing to state an offense. Fed. R. Crim. P. Rule 12(b)(3)(B)(v). "Under Fed. R. Crim. P. 12(b) an indictment may be dismissed where there is an infirmity of law in the prosecution; a court may not dismiss an indictment, however, on a determination of facts that should have been developed at trial." *United States v. Torkington*, 812 F.2d 1347, 1354 (11th Cir.1987); *United States v. DeVegter*, 198 F.3d 1324 (11th Cir. 1999). An indictment must contain "a plain, concise, and definite written statement of the essential facts constituting the offense charged." *United States v. Brewbaker* 87 F.4th 563, 572 (4th Cir. 2023) (quoting Fed. R. Crim. P. 7(c)(1)). "[A] criminal indictment need only 'apprise the defendant of the charged offense" . . . "so that the defendant can prepare a defense and plead double jeopardy in any future prosecution for the same offense." *United States v. Rodriguez-Rivera*, 918 F.3d 32, 34 (1st Cir. 2019) (reversing district court's grant of a motion to dismiss

because "the proceedings as they now stand provide no occasion for determining whether the government's proof is sufficient to sustain a conviction"). District courts "rarely" dismiss indictments for the failure to state an offense. *Brewbaker*, 87 F.4th at 572.

Courts have consistently held that "whether a defendant's statement is a true threat or mere political speech is a question for the jury." *United States v. Viefhaus*, 168 F.3d 392, 397 (10th Cir. 1999). As the District Court for the Southern District of Florida noted when denying a motion to dismiss an indictment brought pursuant to 18 U.S.C. § 875(c), "that's because, in deciding whether a statement constitutes a 'true threat,' we must look closely *both* at the speech's content *and* at its context." *United States v. Hussaini*, No. 19-60387-CR-Altman, 2022 WL 138474, at *5 (S.D. Fla. Jan. 14, 2022) (collecting cases). *See also United States v. Taylor*, 972 F.2d 1247, 1251 (11th Cir. 1992) (explaining in the context of reversing a grant of a motion for judgment of acquittal that determination of whether a communication is a threat is a question of fact to be left to the jury). *See also United States v. Davis*, 854 F.3d 1276, 1292-93 (11th Cir. 2017) (citing to *Taylor* and stating, "We have said that 'whether a communication is a threat is a question of fact to be left to the jury . . . If a reasonable recipient, familiar with the context of the communication, would interpret it as a threat, the issue should go to the jury.'"). Only "[i]f there is no question that a defendant's speech is protected by the First Amendment," may a court dismiss the charge as a matter of law. *Viefhaus*, 168 F.3d at 397. Defendant has not made that showing here.

### B.     True threats are not protected speech

The First Amendment to the Constitution prohibits Congress from creating laws which abridge the freedom of speech. U.S. Const. Amend I. The Supreme Court recognized certain "well-defined and narrowly limited classes of speech, the prevention and punishment of which have never been thought to raise any Constitutional problem." *Chaplinsky v. New Hampshire*, 315 U.S.

568, 571-72 (1942). Unprotected speech includes obscenity, defamation, speech integral to criminal conduct, fighting words, fraud, speech presenting a grave and imminent threat, and true threats. *See United States v. Alvarez*, 567 U.S. 709, 717 (2012). As a true threat, the speech at issue here is not protected by the First Amendment.

"True threats encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." *Virginia v. Black*, 538 U.S. 343, 359 (2003). The speaker does not have to actually intend to carry out the threat for the statement to constitute a true threat. *Id*. at 359-60. As discussed below, Defendant's postcard contained a true threat, therefore it was not First Amendment protected speech.

    **C.**    **The antisemitic postcard Defendant sent to Rabbi Bahar's home which stated, "We have the Zyklon B," "GASTHEJEWS" contained a true threat.**

In *United States v. Elonis*, 575 U.S. 723 (2015), the Supreme Court of the United States held that in order to prove an offense under a similarly worded statute, 18 U.S.C. § 875(c), the Government must prove that the defendant intended to threaten the recipient or had knowledge that the communication would be viewed as a threat. The mental state of the Defendant was further addressed in in *Counterman v. Colorado*, 143 S. Ct. 2106 (2023). In *Counterman*, the Supreme Court held that, in order to avoid "chilling fully protected expression," the First Amendment requires the government to prove in a criminal prosecution for "true threats" that the defendant subjectively understood the threatening nature of his statement. *Id.* at 2115. The Court further held, however, that a mental state of recklessness is constitutionally sufficient. "[R]eckless defendants,"

the Court observed, "have done more than make a bad mistake. They have consciously accepted a substantial risk of inflicting serious harm." *Id.* at 2118.[3]

"Although the Supreme Court has made clear that the defendant's subjective mental state must be taken into account, the objective person standard remains useful in the determination of whether the defendant's statement actually constitutes a "true threat," as that term has been defined in prior case law."  11th Cir. Pattern Jury Instr. (Criminal Cases) 2024, O31.3. cmt. (discussing consideration of the reasonable person standard in light of *Elonis*). As the Eleventh Circuit Jury Instructions suggest, therefore, the "recipient's belief that the statements are a threat is relevant in the inquiry of whether a reasonable person would perceive the statements as a threat." *United States v. Alaboud*, 347 F.3d 1293, 1298 (11th Cir. 2003), *overruled by United States v. Martinez*, 800 F.3d 1293, 1295 (11th Cir. 2015).

The context surrounding the language contained in Defendant's mailed threat is important to consider in the true threat analysis. See, e.g., *Heller v. Bedford Cent. Sch. Dist.*, 665 F. App'x 49, 52 (2d Cir. 2016) ("Context is crucial to identification of a true threat. . . . The context here bespeaks danger.") First, Defendant chose to mail the postcard to a specific Rabbi, at her home address. In evaluating threats, courts have historically considered the manner in which the threat was made and have generally found that threats communicated indirectly are less likely to be true threats than those communicated directly to the victim.  See *United States v. Turner*, 720 F.3d 411, 424 (2d Cir. 2013) (finding that statements encouraging third parties to commit violence against

---

[3] While Defendant's argument in support of his motion does not hinge on his *mens rea*, at trial, the United States' proof will exceed the minimum recklessness standard to prove knowledge. The United States expects that the evidence will show that Defendant was consumed with Nazi ideology, the Holocaust, and hatred for people of Jewish faith. For example, one candle that he sold referenced burning Jews as "burnt kosher fat." Another candle referenced making "lampshades from the skin of Jews." At his home, he had a portrait of Adolph Hitler.

9

federal judges constitute true threats); *United States v. Daughenbaugh*, 49 F.3d 171, 174 (5th Cir. 1995) (relying, in part, on the fact that "the mode of communication – private letter – is the typical means for delivery of threats."). In this respect, Defendant's targeted mailing is unlike those situations in which flyers are distributed over a generalized area, such as a neighborhood, and thus further supports a finding that the postcard was a true threat.

Common sense tells us that people's homes are personal and more sensitive than public locations, when considering safety. One must assume that Defendant had to take the time to search for the victim's home address to send the threat. This leads a reasonable person to wonder—if he sent a threat to my home address, what else might he do? Why did he take the time to find my house? Would a reasonable person find this to be threatening? Absolutely.

Defendant's choice of words is also telling. He did not write "the Holocaust was a great thing" or "it was good that the Jews were gassed." Instead, he wrote "GASTHEJEWS." He wrote in present tense. The Eleventh Circuit has recognized that the tense of the language matters. *United States v. Fleury*, 20 F.4th 1353, 1365 (11th Cir. 2021). In *Fleury*, the Court noted that the threat "is worded in the present tense and evidences an intent to intimidate and place the recipient of the message in fear of bodily harm or death." *Id*. Defendant's choice of words matters here, too.

Similar to other threats that courts regularly consider, Defendant chose to mention both the "weapon" (Zyklon B) and the way in which he would injure or kill (GAS THE JEWS). This can be compared to other hypothetical true threats, such as "we have the AR-15, shoot up the school" or "we have the noose, hang the Blacks."

His specific reference to the Holocaust only adds more weight to the scale in favor of this being deemed a true threat. Of course, he purposefully references a historical event where the Nazi German Regime murdered six million Jews, many in gas chambers with Zyklon B. Defendant's

statement was targeted and rooted in one of mankind's most horrific and disturbing moments. This context matters. He sent this threat to the home of a woman leading a Temple and actively speaking out against antisemitism. She received the threat the day after Georgia House Bill 30 was signed by the Governor. In fact, in his motion, counsel for Defendant acknowledges that this is exactly why Rabbi Bahar was selected as the victim. *See* Doc. 28 at 2.

Defendant argues that he sent the "promotional material" to go "viral," but this argument does not help his case. The threatening and illegal nature of his speech is exactly why he expected that it would receive more attention on social media. Had his postcard not contained a true threat, it would have been less shocking. Defendant's attempt to frame this criminal act as just a marketing scheme is preposterous. This "fake shield" from prosecution need not be considered. A threat - GASTHEJEWS - masked as a discount code should not protect Defendant from prosecution.

Defendant's argument that he researched state law is ironic and cuts against him. Some evidence suggests that Defendant knew his communication was illegal. In response to a concerned colleague warning Defendant that he could be charged with a hate crime, Defendant stated, "I appreciate your concern, but it's what we do." Defendant's behavior suggests that he was relying on a technicality of state law to avoid criminal liability.[4] Specifically, it appears Defendant appreciated the threatening nature of his postcard, he just assumed that he could not be prosecuted since the threat was sent by mail, as opposed to electronic communication. Typically, individuals do not research the legality of their actions, unless they suspect that their actions are in fact, illegal.

---

[4] On February 2, 2024, on Gab AI, Defendant stated "I've been designing postcards all day. I also took a deep look at that Georgia law. That kike is going to be getting more postcards in the future, and there's nothing she can do about it." He later said, "But what about harassment you may ask? That only applies to telecommunications in Georgia. There is no harassment law against mail." The United States assumes Defendant was referencing O.C.G.A. § 16-11-39.1, which criminalizes harassing communications.

11

## IV.   CONCLUSION

The Court should deny Defendant's motion to dismiss the indictment. Defendant, who owns and operates a business that sells antisemitic merchandise, chose to send a threat to a Jewish woman because she was exercising her right to advocate for legislation that defined antisemitism. He sent the threat to her home address. His message to her is not protected speech because it contained a true threat. He stated that he had the Zyklon B and included the message "GASTHEJEWS". Rabbi Bahar feared for her safety and reported the threat to law enforcement. The reference to Zyklon B was personal – her family member had been murdered with this poison in the Holocaust. At his trial, Rabbi Bahar will further explain to the jury why this message placed her in fear. The Court should deny this motion because true threats such as this are not constitutionally protected speech.

Respectfully submitted this 12th day of July, 2024.

                                    PETER D. LEARY
                                    UNITED STATES ATTORNEY

BY:   *s/ William R. Keyes*
        William R. Keyes
        Assistant United States Attorney
        Georgia Bar No. 368650
        United States Attorney's Office
        Middle District of Georgia
        P.O. Box 1702
        Macon, Georgia 31202
        Telephone: (478) 621-2635
        E-mail: William.r.keyes@usdoj.gov

## CERTIFICATE OF SERVICE

I, WILLIAM R. KEYES, Assistant United States Attorney, hereby certify that I electronically filed the within and foregoing *United States' Response to Defendant's Motion to Dismiss* by electronically filing said motion with the Clerk of the Court using the CM/ECF system.

Respectfully submitted, this 12th day of July, 2024.

        PETER D. LEARY
        UNITED STATES ATTORNEY

BY:    <u>s/ William R. Keyes</u>
        William R. Keyes
        Assistant United States Attorney
        Georgia Bar No. 368650
        United States Attorney's Office
        Middle District of Georgia
        P.O. Box 1702
        Macon, Georgia 31202
        Telephone: (478) 621-2635
        E-mail: William.r.keyes@usdoj.gov