# IN THE UNITED STATES DISTRICT COURT FOR
## THE MIDDLE DISTRICT OF GEORGIA
### MACON DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v** | **CASE NO.** |
| | **5:24-CR-34 (MTT)** |
| **ARIEL E. COLLAZO RAMOS**<br>    **Defendant** | |

## Reply to the Government's Response Regarding Dismissal

### INTRODUCTION

Ariel Ramos asked this Court to dismiss the indictment against him. (Doc. 28.) In response, the Government argued that such a motion is not ripe for determination. (Doc. 29.) In doing so, the government relied on several cases that do not support its argument. Therefore, Mr. Ramos files this reply.

### ARGUMENT

If the plain language of an indictment does not state an offense, it should be dismissed. Fed. R. Crim. P. 12(b)(3)(B)(v). And, when such an issue is present, the indictment may be dismissed before trial–if a hearing on the motion to dismiss "can be determined without a trial on the merits." Fed. R. Crim. P. 12(b)(3). In other words, if the factual allegations in an indictment—viewed in the light most favorable to the government—cannot satisfy the elements of the charged offense, pretrial dismissal is appropriate. *United States v. Torkington*, 812 F.2d 1347, 1354 (11th Cir. 1987).

Here, the government's indictment, which attempts to charge a violation of 18 U.S.C. § 876(c), is facially inadequate, and any hearing on such issue will not

require a trial on the merits. The government's eight-page, speaking indictment fails to outline a threat. Therefore, pretrial dismissal, as explained below, is appropriate.

**(1) The government's indictment does not state an offense because it does not identify a statement that could possibly be construed as a threat.**

Federal law prohibits individuals from mailing communications that contain any "threat to injure the person of the addressee or of another." 18 U.S.C. § 876(c). What constitutes a threat, however, has been the subject of ongoing litigation, because punishing individuals based on what they say has the potential to chill protected, non-threatening speech that—even if close to a threat—in fact does not threaten any individual. *Counterman v. Colorado*, 600 U.S. 66, 72–73 (2023) (reversing a Colorado conviction for "repeatedly mak[ing] any form of communication with another . . . that would cause a reasonable person to suffer serious emotional distress."). To constitute a threat, a statement must "communicate a serious expression of an intent to commit an act of unlawful violence" against another. *Virginia v. Black*, 538 U.S. 343, 359 (2003) (analyzing a Virginia law that made it unlawful to burn a cross with the intent to intimidate a person).[1] Everything outside of that narrow definition is not a treat, is not

---

[1] In *Black*, the Supreme Court also discussed how intimidation could be a type of "true threat": "Intimidation in the constitutionally proscribable sense of the word is a type of true threat, where a speaker directs a threat to a person or group of persons with the intent of placing the victim in fear of bodily harm or death." *Black*, 538 U.S. at 360. That part of the Court's opinion was necessary because the Virginia law at issue prohibited burning crosses with the intent to *intimidate*. *Id*. at 348. Because the federal statute at issue here, however, does include intimidation as a means, that part of the Supreme Court's analysis is inapplicable to this case. *See* 18 U.S.C. §876(C).

2

prohibited by 18 U.S.C. § 876(c), and is likely protected by the First Amendment. *See* U.S. Const. amend I; *Eleventh Circuit Pattern Jury Instruction* O31.3 (Apr. 2024).

As charged in the indictment in this case, Mr. Ramos sent Elizabeth Bahar a watermarked postcard from his business, Patriot Candle Company. (Doc. 1.) That postcard, displayed below and in the indictment, had an image of a man in a rat costume on the front and a message on the back. (Doc. 1.) The full message read:

> Is there a child rape, torture and murder tunnel under
> your house? We have the Zyklon B. Use code
> "GASTHEJEWS" for 10% off?

(Doc. 1.)

 

This postcard, as outlined in the government's indictment, was consistent with the products that Mr. Ramos's business sold, which included "candles, postcards, and other products depicting racial, white nationalist themes." (Doc. 1.)

3

Additionally, "[o]ne candle listed for sale on the website was called 'Zyklon B.'" (Doc. 1)

After Mr. Ramos moved to dismiss that indictment (Doc. 28), the government responded with conclusory allegations that Mr. Ramos mailed a threat, therefore, its indictment is valid, and the case should proceed. (Doc. 29 at 8.) It also trotted out various case examples to support its conclusions, each of which is summarized below. None of the cases support the government's contention that Mr. Ramos's postcard contained a threat, and some of them are inapplicable to this case.

| Citation & Statute at Issue | Relevant Information |
|---|---|
| **Supreme Court Cases** ||
| *Counterman v. Colorado*, 600 U.S. 66 (2023)<br><br>Colorado law prohibiting "'[r]epeatedly . . . mak[ing] any form of communication with another person' in 'a manner that would cause . . . serious emotional distress.'" | Counterman sent a local singer hundreds of Facebook messages despite never having met her. Though she repeatedly blocked him, he would create new accounts and start again. Some were prosaic, some suggested he was surveilling her, and a number expressed anger and envisaged harm, including the following:<br><br>"Fuck off permanently" and "Staying in cyber life is going to kill you." |

| | |
|---|---|
| *Elonis v. United States*, 575 U.S. 723 (2015)<br><br>18 U.S.C. § 875 (interstate threat) | Elonis's wife left him, and he was fired from an amusement park after posting a photo of himself holding a toy knife to a co-worker's neck with the caption, "I wish." Thereafter, he posted the following messages:<br><br>"Y'all sayn' I had access to the keys for all the f***in' gates. That I have sinister plans for all my friends and must have taken home a couple . . . You see, even without a paycheck, I'm still the main attraction. Whoever thought the Halloween Haunt could be so f***in' scary?"<br><br>"Did you know that it's illegal for me to say I want to kill my wife? . . . .[I]t's very illegal to say I really, really think someone out there should kill my wife . . . . [I]t's incredibly illegal, extremely illegal to go on Facebook and say something like the best place to fire a mortar launcher at her house would be from the cornfield . . . . Yet even more illegal to show an illustrated diagram. [diagram of the house." |
| *Virginia v. Black*, 538 U.S. 343 (2003)<br><br>Virginia statute prohibiting burning a cross with the intent to intimidate and a jury instruction that cross burning is sufficient to infer intent. | Three individuals were involved in two separate cross burning incidents. One pleaded guilty, and two went to trial. One of those trials included an instruction that cross burning itself is sufficient evidence to infer intent.<br><br>Though cross burning "is a particularly virulent form of intimidation," cross burning, by itself, is not proof of an intent to intimidate. |
| **Eleventh Circuit Cases** | |
| *United States v. Fleury*, 20 F.4th 1353 (11th Cir. 2021)<br><br>18 U.S.C. § 875 (interstate threat) | After the Marjory Stoneman Douglas High School shooting in Florida, Fleury sent family members of the victims messages, some of which included:<br><br>"I'm your abductor I'm kidnapping you fool," and "With the power of my AR-15, I take your loved ones away from you PERMANENTLY." |

| | |
|---|---|
| *United States v. Alaboud,* 347 F.3d 1293 (11th Cir. 2003)<br><br>18 U.S.C. § 875 (interstate threat) | An Iraqi immigrant thought he was being discriminated against, so he hired an attorney who he later learned was Jewish. So, he fired the attorney, who refused to return the retainer. Two years later, he called the attorney's office 89 times, with the following statements:<br><br>"[O]ne day soon one will come and liberate . . . this planet from the grip of Jews, like yourself . . . but the rest should be heads put in a vice and . . . these should be knocked out with a sledge hammer."<br><br>"[L]ook at Montserrat [[an island destroyed by a volcano)] and you will be looking at your company."<br><br>"If justice is not given to me . . . Key West to Tallahassee will be driven from their homes, what happened to Montserrat will happen to them . . ."<br><br>"[Y]ou and all the Jewish women and children would be burned."<br><br>"Ax and sledgehammers would be utilized to make justice." |
| *United States v. Taylor,* 972 F.2d 1247 (11th Cir. 1992).<br><br>18 U.S.C. § 876 (mailed threat) | Taylor's high school sweetheart broke off their relationship in 1969. Taylor, however, continued to send hundreds of letters to her. In 1989, one letter stated:<br><br>"Your husband . . . will have his health take a turn for the worse this Christmas season and you will be widowed in 1990." Another stated, "Despite the major disruptions that widowhood will bring . . . I . . . will be there for you. David's death from a cerebral vascular accident of an unknown idiopathy will sun all those who loved him." |
| **Out-of-Circuit Cases** | |
| *Heller v. Bedford Cent. Sch. Dist.,* 665 F.App'x 49 (2nd Cir. 2016) (Summary Order)<br><br>(Section 1983 suit related to an arrest for threatening behavior) | Heller, a former public school teach, started collecting guns and telling people that aliens ran the government, the Sandy Hook massacre was fake, and that he wanted to kill people. As a result, he was arrested driving home from a gun store and "induced . . . to go to a local hospital where he was psychiatrically committed and later released." |

| | |
|---|---|
| *United States v. Turner*, 720 F.3d 411 (2nd Cir. 2013)<br><br>18 U.S.C. § 115 (threats against judges) | Turner, after the Seventh Circuit, declared the Second Amendment did not apply to the states, wrote a blog post about the three-judge panel, where he stated:<br><br>"Let me be the first to say this plainly: These Judges deserve to be killed. Their blood will replenish the tree of liberty. A small price to pay to assure freedom for millions."<br><br>He then posted the names and photos of the judges, the room numbers for their chambers, and a photo of the courthouse. |
| *United States v. Viefhaus*, 168 F.3d 392 (10th Cir. 1999)<br><br>18 U.S.C. § 844 (phoned bomb threats) | Viefhaus started a white supremacy organization and used an answering machine to record the organization's viewpoints. One of the messages on the machine stated, "bombs will be activated in 15 pre-selected major U.S. cities" within one week. |
| *United States v. Daughenbaugh*, 49 F.3d 171 (5th Cir. 1995)<br><br>18 U.S.C. § 876 (mailing threats) | Daughenbaugh, a Texas inmate, sent letters to three Texas judges and a U.S. bankruptcy judge. Two of those letters stated:<br><br>"Now comes the Aryan warrior to bring you warning of your coming death . . . . [A]ll white judges will be checked out and will be asked to leave the country or be executed."<br><br>The remaining letters threatened to "execute all judges at once," warned that "death is at hand," and requested their resignation or "face treason charges & death." |

None of these cases support the government's argument in support of denying Mr. Ramos's motion to dismiss the indictment because each showcases the distinction between statements declaring an intent to commit an act and what Mr. Ramos did—advertise an abhorrent product. Some of them, however, are objectively inapplicable to determining what a threat is because they dealt with statutes that

penalized behavior outside of a threat, such as harassment[2] and intimidation,[3] or related to a civil lawsuit for an arrest but no conviction.[4]

Each of the government's examples relate to an individual expressing an intent to do some act. Elonis spoke explicitly about his desire to kill his wife. *Elonis*, 575 U.S. at 728. Fleury said he was an "abductor" and spoke about killing loved ones. *Fleury*, 20 F.4th at 1359. Alaboud explicitly talked about putting individuals heads' in vices, wiping homes off the map, burning Jewish women and children, and using axes and sledgehammers to get justice. *Alaboud*, 347 F.3d at 195–96. Taylor told his high school sweetheart that her husband would die and he would be there to take his place. *Taylor*, 972 F.2d at 1249–50. Turner stated in no uncertain terms that the three-judge panel deserved to die and posted a way to do it. *Turner*, 720 F.3d at 415–16. Viefhaus similarly left a message that 15 bombs were going to go off in 15 different cities. *Viefhaus*, 168 F.3d at 394. And finally, Daughenbaugh sent warnings of "coming death," executions, and treason charges. *Daughenbaugh*, 49 F.3d at 173.

Ramos, on the other hand, sent a simplistic, abhorrent message that asked a question and offered 10% of his business's products. Thanks to the government's speaking indictment, which provides context for that statement, we know that Mr. Ramos did in fact sell Zyklon B candles. If this were a different case, and the government had not provided as much specificity in its indictment, maybe it could

---

[2] *Counterman*, 600 U.S. at 70.
[3] *Black*, 528 U.S. at 348.
[4] *Heller*, 665 F. App'x at 50–51.

make an argument that this case was not ripe for pretrial dismissal for failure to state a claim. But that's not this case. The government has provided the context for the statement, and this Court can determine the issue from the face of the indictment itself.

**CONCLUSION**

Mr. Ramos's post card may be awful, but it is not unlawful because it does not contain an intent to do any act. The government's indictment also provides clear context to support that conclusion. As a result, the government has failed to state an offense, and this case should be dismissed under Rule 12 of the Federal Rules of Criminal Procedure.

Dated August 6, 2024.

Respectfully submitted,

*s / E. Addison Gantt*
E. Addison Gantt
Assistant Federal Defender
GA State Bar No.: 385634

Federal Defenders of the
Middle District of Georgia, Inc.
440 Martin Luther King, Jr. Boulevard
Suite 400
Macon, Georgia 31201
Tel: (478) 743-4747
Fax: (478) 207-3419
E-mail: addison_gantt@fd.org

## Certificate of Service

I, E. Addison Gantt, hereby certify that, on August 6, 2024, I caused the foregoing *Reply to the Government's Response Regarding Dismissal* to be electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such to all counsel of record.

*s / E. Addison Gantt*
E. Addison Gantt
Assistant Federal Defender
GA State Bar No.: 385634

Federal Defenders of the
Middle District of Georgia, Inc.
440 Martin Luther King, Jr. Boulevard
Suite 400
Macon, Georgia 31201
Tel: (478) 743-4747
Fax: (478) 207-3419
E-mail:  addison_gantt@fd.org